[Civ. No. 5292.   Third Appellate District.—May 14, 1935.]

B. B. MANFORD, Respondent, v. ARTHUR COATS, as
Executor, etc., Appellant.

744

Loyd E. Hewitt and Edward D. Keil for Appellant.

McDaniel & Mahon for Respondent.

PULLEN, P. J.—This is an appeal by the executor of the last will and testament of William M. Strange, deceased, from a judgment rendered in favor of plaintiff and against the executor, awarding to plaintiff the sum of $1650 for services rendered decedent during his lifetime by the wife of plaintiff.

The facts briefly summarized are that B. B. Manford and Lelia B. Manford were, at all the times mentioned in the action, husband and wife. In 1919, William M. Strange, then a man advanced in years, came to the home of plaintiff and asked if he could make his home there. Consent was given and Strange moved into the home of plaintiff and remained there until his death in 1933. Apparently nothing was said about compensation when Strange first came but after he had been there three or four years he told plaintiff and his wife that if they would take care of him as long as he should live, he would provide for them. On several subsequent occasions he repeated this promise to the wife of plaintiff and also made similar statements to Frank Allen, an old friend of his, and Berkeley Manford and Van Camp Manford, sons of plaintiff, although none of these latter witnesses fixed any definite time at which these statements were made. We may add that the trial court made general findings supporting the claim of plaintiff that Lelia B. Manford performed services for William M. Strange who promised her if she would permit him to live in her home and receive such services as she might render

during the remainder of his life he would pay her a reasonable sum therefor by having inserted in his will an adequate amount to compensate her. The court also found that deceased lived the balance of his life at the home of plaintiff but failed to make any provision in his will for the services rendered, and that nothing was paid on account thereof.

Appellant urges as grounds for reversal, first, error in permitting Mrs. Manford, wife of plaintiff, to testify over the objection of defendant as to matters or facts occurring before the death of Strange. Secondly, error in denying defendant's motion for nonsuit. Thirdly, a fatal variance between the allegations in the complaint and the proof, and lastly, that the claim is barred by subdivision 6, section 1973, of the Code of Civil Procedure, and by sections 337 and 339 of the Code of Civil Procedure. We will discuss these points in the order named.

It is the contention of appellant that the wife of plaintiff cannot testify since the amendments to sections 1401 and 1402 of the Civil Code, now 201 and 202 of the Probate Code, and the enactment of section 161a of the Civil Code.

The objection to the testimony of Mrs. Manford is taken under subdivision 3 of section 1880 of the Code of Civil Procedure, which reads:

"The following persons cannot be witnesses; . . . 3. Parties or assignors of parties to an action or proceeding or persons in whose behalf the action or proceeding is prosecuted, against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person." Mrs. Manford testified to matters occurring before the death of Strange, and appellant charges the action is one in which she is interested as well as one brought in her behalf, and therefore comes within the inhibition set forth in the foregoing section.

Prior to the enactment of section 161a of the Civil Code, the wife had no present interest in the community property and therefore in an action by her husband was not prohibited from testifying by section 1880 of the Code of Civil Procedure. (*Badover* v. *Guaranty Trust & Savings Bank,* 186 Cal. 775 [200 Pac. 638] ; *Moseley* v. *Heney,* 66 Cal. 478 [6 Pac. 134].)

In 1927, section 161 (a) of the Civil Code was enacted as follows:

"The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property." However, in *Stewart* v. *Stewart*, 204 Cal. 546 [269 Pac. 439], the court in considering the origin and nature of a wife's community rights said: "This section of the Code (161 [a] Civ. Code), whatever effect it may have upon community property acquired subsequent to its effective date, cannot in any manner relate to or govern the ownership of property acquired prior thereto."

When Mrs. Manford was asked on direct examination what Mr. Strange said when he came to the house and requested the privilege of living with them, appellant objected to the question upon the ground that it was incompetent, prohibited by section 1880, subdivision 3, of the Code of Civil Procedure, and was at variance with the pleadings and not within the issues to be proved, self-serving and barred by subdivision 6, section 1973 of the Code of Civil Procedure, and subdivisions 1 and 2 of section 337 of the Code of Civil Procedure, and by the provisions of section 339 of the Code of Civil Procedure. These objections, however, were overruled subject to the right to later move to strike out if desired. It was also stipulated that the same objections would be deemed to have been made to all questions along a similar line. Mrs. Manford then continued, stating that Mr. Manford objected on the ground that they did not have sufficient room. Mr. Strange said it was the only home he had and that he had no one to take care of him, so he was permitted to move in. Nothing was said at that time about payment. After Strange had been in the Manford household three or four years he told Mrs. Manford if they would take care of him he would provide for them, and upon another occasion said, "You and Ben take care of me as long as I live and I will see you are well provided for," which statements he repeated to Mrs. Manford and others on numerous occasions. The witness also testified she was not related to Strange and would not have rendered the service if she had not believed the statements of deceased. She also testified she received nothing for taking care of Strange except to receive from time to time payments of $5 "to help pay for lights and water" but kept no record of the total thus paid.

She further testified that $3,000 was a reasonable amount for the services rendered, which consisted of the use of a room, doing his mending, caring for him when sick and ailing, furnishing many of his meals, taking them to his room when he was unable to come to the table and accorded him such further care and attention as she would a member of her family.

Inasmuch as all that Mrs. Manford testified to regarding the agreement with the deceased occurred prior to 1927, the date of the enactment of section 161 (a) of the Civil Code, we can see no error in admitting the testimony. Whether or not, however, her testimony were to be excluded it would not be fatal to the cause of action as other witnesses testified to practically the same statements made to them by deceased at various times. ■ Too, if Manford and Strange entered into a valid contract or agreement Mrs. Manford cannot be deprived of the right to establish that agreement by the enactment of a later legislative act. (*Estate of Patterson,* 155 Cal. 626 [102 Pac. 941, 132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654]; *Morris* v. *Pacific Electric Co.,* 2 Cal. (2d) 764 [43 Pac. (2d) 276].)

■ Appellant next complains because the court, after the presentation of their motion for a nonsuit, permitted respondent to reopen their case and supply the specified deficiencies. Not only was this proper but to have refused to have granted respondent that right might have constituted error. (*Sferlazzo* v. *Oliphant,* 24 Cal. App. 81 [140 Pac. 289].)

■ The complaint, which closely follows the averments of the claim filed with the executor, alleges in paragraph VIII that between certain dates "the said Lelia B. Manford performed services and furnished home comforts and care, company and companionship to said William M. Strange . . . at the special instance and request of said William M. Strange of the reasonable value of the sum of Three Thousand Dollars ($3,000.00)".

"IX.

"That said William M. Strange promised and agreed with said Lelia B. Manford if she would permit him to live in her home . . . and enjoy the home comforts . . . and receive such services as she might render him during the remainder of his life that he would pay her therefor a reasonable and adequate sum by having inserted in his Last Will and Testament a testamentary bequest . . . in an amount adequately sufficient to compensate them . . . " Then follows an allegation in

paragraph X that pursuant to said agreement said William M. Strange lived in the house of plaintiff until his death and that during all of said times Lelia B. Manford kept and performed all of the agreements she had covenanted to perform.

We believe the allegations are in substance for the reasonable value of services rendered. If there does exist a variance between the allegations in the complaint and in the proofs adduced we deem it an immaterial variance as appellant could not have been misled thereby. Section 469 of the Code of Civil Procedure, referring to variance, provides: "No variance between the allegations in a pleading and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. . . . ''

█ The case of *Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84], seems to be conclusive that if services are rendered on the understanding of the parties that they were to be compensated therefor in the will of deceased, said agreement is sufficient to warrant a recovery for the reasonable value of such services where no such will was made. This case was followed in the case of *Rutherford* v. *Peppa,* 53 Cal. App. 309 [199 Pac. 1111], the court there saying: "The recent case of *Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84], was an action in which the plaintiff attempted to recover for the breach of an agreement to make provision by will for payment for services. It was held that although recovery could not be had upon that theory, that the nonsuit was, nevertheless, improper, as plaintiff was not without his remedy. It was held that plaintiff was entitled to the reasonable value of his services upon the theory that where a party has conferred upon another, with the assent of the latter, a benefit which was not intended as a gratuity, and the recipient cannot be held upon his original promise to compensate by virtue of the statute of frauds, the law implies a promise on the part of the party receiving the benefit to pay the reasonable value of whatever has been received under the contract.''

Appellant refers us, however, to the case of *Giles* v. *Reed,* 44 Cal. App. 367 [186 Pac. 614], where the court refused to receive evidence of the reasonable value of services, but in that case the agreement was to compensate plaintiff by devising a specific parcel of real property, and no claim was based on the implied contract, whereas, in the instant case, the agreement was to see that the parties, in consideration of services

rendered by plaintiff at the request of deceased, were well provided for.

Appellant sets up the several statutes of limitations that might be applicable to the situation, but inasmuch as the agreement was to care for the promisor as long as he lived, and that the promisee would then be compensated by a provision in the will, the statutes of limitation would not begin to operate until the promisee had fulfilled his contract.

The judgment is affirmed.

Thompson, J., and Plummer, J., concurred.